NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| VIVIANE K., | ) | |
| | ) | Supreme Court No. S-17582 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-18-00029 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1772 – June 3, 2020 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating.]

## I. INTRODUCTION

A mother appeals the termination of her parental rights to her infant daughter. She argues that the Office of Children's Services (OCS), by not doing more to help her obtain substance abuse treatment, violated the Indian Child Welfare Act's

---

\* Entered under Alaska Appellate Rule 214.

requirement that OCS make active efforts to provide remedial and rehabilitative services designed to prevent the breakup of the family. We conclude, however, that the court did not clearly err in finding that OCS made active efforts that were frustrated by the mother's failure to engage in the services she was offered. We therefore affirm the order terminating the mother's parental rights.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In late December 2017 Viviane K. gave birth to a daughter, Selena,[1] an Indian child as defined by the Indian Child Welfare Act (ICWA).[2] Throughout her pregnancy Viviane struggled with a serious opiate addiction. She tested positive for narcotics at the time of Selena's delivery and admitted she used heroin just two days before. Selena tested positive for opiates at birth and remained in the neonatal intensive care unit for two weeks.

The hospital made a report to OCS, which took emergency custody of Selena upon her discharge from the hospital and filed a petition the next day seeking temporary custody and an adjudication that she was a child in need of aid. The court granted the petition. Selena was placed with a non-relative foster family and then with the family of Viviane's brother.

OCS had a team decision-making meeting with Viviane and the putative father, Mark. Viviane agreed to a drug test and tested positive for opiates. She was

---

[1]    We use pseudonyms to protect the family's privacy.

[2]    *See* 25 U.S.C. § 1903(4) (2018) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").

referred to a substance abuse assessment and for drug testing, but she missed her first four drug tests.

At the end of January the OCS intake worker attempted to reach Viviane by phone, but her voice mailbox was full. She did respond to an email a few days later; she asked the intake worker for the phone numbers of the drug testing and treatment programs they had discussed at the team meeting.

On February 2 the case was assigned to an OCS family caseworker, Darren Don. Don sent the parents a certified letter regarding case planning and referrals, but the letter was returned unclaimed. He emailed Viviane about a medical appointment for Selena, but she did not respond for nearly a month, and she missed the next five drug tests scheduled for February.

In early March Viviane emailed Don asking about the substance abuse assessment, which she had not yet received; Don confirmed that she had been referred to Cook Inlet Tribal Council's (CITC) Recovery Services Program. He sent collateral information on Viviane to CITC Recovery Services and informed her he had done so.

Another certified letter to Viviane about case planning was returned to OCS unclaimed, but Don was finally able to meet with Viviane in April to talk about necessary services and develop a case plan. Viviane's case plan provided for a substance abuse assessment and following all of its recommendations; drug testing; regular visits with Selena; and classes on parenting and healthy relationships. Don made a referral to parenting classes and gave Viviane information about a self-referral parenting program. But Viviane missed four out of six visits with Selena scheduled in March and April, and she continued missing her scheduled drug tests through the middle of May.

In June Viviane completed a substance abuse assessment at CITC Recovery Services. The assessment recommended high-intensity residential treatment for severe opioid use disorder, moderate cannabis use disorder, and mild amphetamine-type

substance use disorder. Viviane dropped off an application for admission to the residential treatment program at OCS's office. Don reviewed the application and notified Viviane of "some stuff that needed to be done" to complete it, including a physical and a tuberculosis test. He left the application at OCS's front desk for Viviane to pick up; at trial he did not recall whether he followed up to make sure she had done so.

In early July Don contacted Mark and Viviane to arrange another meeting, but neither parent attended. Don called both of them but only reached Mark, who said he did not know where Viviane was. Don left a voicemail for Viviane advising her of an upcoming adjudication hearing; Viviane did not respond or attend the hearing.

Don again reached Mark in October. Lacking any effective contact information for Viviane, he asked Mark to have her get in touch with him, but again he did not hear from her for several months.

On Christmas Eve Viviane emailed Don requesting a visit with Selena for Christmas and Selena's birthday, but Don was unable to arrange those visits with the foster parents on such short notice. He left voicemails for Mark and Viviane in January 2019 but did not hear back from them. In February Mark answered his phone when Don called, but he told Don he had moved to Alabama and did not know where Viviane was or how to reach her. Don then learned that Viviane was incarcerated, and he visited her in prison to discuss her case. He sent information to the prison's OCS liaison so that Viviane could get another substance abuse assessment, and a week later Viviane had an OCS-arranged visit with Selena in prison, the first visit they had had in 11 months. Don tried to set up another prison visit, but Viviane was released before it happened, and Don's next attempts to locate her or contact her by phone were again unsuccessful.

In March 2019 OCS filed a petition to terminate Viviane's and Mark's parental rights under AS 47.10.011(1) (abandonment), (9) (neglect), and (10) (parental

substance abuse). Don got a phone number for Viviane from her attorney, and he and another OCS employee left six voicemails for her in May and June. He finally reached her in July, their first contact since his prison visit five months earlier. He made another family contact referral at Viviane's request so she could recommence visitation. But Viviane again failed to respond to voicemails or emails, and she had no visits with Selena after her release from prison in April.

## B. Termination Trial

The termination trial was held over two days in the summer of 2019. Mark was not present; his attorney accepted an offer of proof and agreed to the termination of Mark's parental rights.

Don testified that Viviane was not in compliance with her case plan and that her engagement in it had been "very minimal." He testified that it was difficult to stay in touch with the parents because they failed to respond to his messages. He testified that any time he reached Mark he asked him to have Viviane contact OCS, but Viviane rarely did.

The superior court terminated Viviane's parental rights to Selena. The court observed in its oral ruling that "the only real defense [was lack of] active efforts" but that OCS carried its burden of proof. The court found that Don "not only did his best, but was generally prompt and consistent in responding to contacts and initiating most of the contacts and in following through." The court found that Viviane's engagement with OCS fluctuated based on her drug use: she would be responsive for short periods of time when sober and then "just drop off the radar" when she began using again. The court found that Viviane "never really engaged in the program" and "ha[dn't] made an effort." The court's written order tracked its oral findings.

Viviane appeals, challenging only the superior court's active efforts finding.

## III. STANDARD OF REVIEW

"Whether OCS made active efforts to provide remedial and rehabilitative services to reunify the family as required by ICWA is a mixed question of law and fact. We review the content of the superior court's findings for clear error, but we review de novo whether those findings satisfy the requirements of the CINA rules and ICWA."[3]

## IV. DISCUSSION

### The Superior Court Did Not Err In Finding That OCS Made Active Efforts To Prevent The Breakup Of The Family.

When OCS is seeking to terminate parental rights, ICWA requires that it prove by clear and convincing evidence that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."[4] The governing regulations of the Bureau of Indian Affairs define active efforts as "affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family."[5] Whether OCS's efforts were active is determined on a case-by-case basis.[6] "Generally, we will find that active efforts have been made where OCS 'take[s] the client through the steps of the plan for reunification of the family' but

---

[3] *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 526 (Alaska 2013) (citation omitted).

[4] 25 U.S.C. § 1912(d) (2018); CINA Rule 18(c)(2)(B); *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 760-61 (Alaska 2009).

[5] 25 C.F.R. § 23.2 (2019).

[6] *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010).

decline to find active efforts where 'OCS develops [a] case plan, but the client must develop his or her own resources towards bringing it to fruition.' "[7]

"[T]he active efforts requirement does not require perfection. Our concern is not with whether [OCS's] efforts were ideal, but with whether they crossed the threshold between passive and active efforts."[8] "The court should look to OCS's 'involvement in its entirety,' and may consider a parent's demonstrated unwillingness to participate in treatment as a factor in determining whether OCS met its active efforts burden."[9] We have held that "[f]ailed attempts to contact the parent or obtain information from her may qualify as active efforts if the parent's evasive or combative conduct 'rendered provision of services practically impossible.' "[10] "And '[i]f a parent has a long history of refusing treatment and continues to refuse treatment, OCS is not required to keep up its active efforts once it is clear that these efforts would be futile.' "[11]

Viviane argues that although she admitted her substance abuse problem from the beginning of OCS's involvement and was willing to engage in treatment, OCS failed to act affirmatively to get her into a program. But the evidence supports the conclusion that, overall, OCS was active in helping Viviane address her substance abuse.

---

[7]     *Id.* (alterations in original) (remedying minor quotation error) (quoting *Wilson W. v. State*, 185 P.3d 94, 101 (Alaska 2008)).

[8]     *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 272 (Alaska 2011).

[9]     *Id.* at 271 (quoting *Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 213 (Alaska 2010)).

[10]     *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 433 (Alaska 2015) (quoting *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002)).

[11]     *Id.* (alteration in original) (quoting *Wilson W.*, 185 P.3d at 101).

OCS scheduled drug tests for her, referred her to substance abuse assessments, and referred her to treatment programs, helping her as necessary with application materials and vouchers. OCS scheduled and facilitated visits between Viviane and Selena, referred Viviane to parenting classes, and actively developed case plans with her. Her caseworker, Don, attempted to follow up at every step and tried to maintain contact with Viviane despite her evasiveness and lack of response. The evidence supports the superior court's finding that Don "did his best" and "was generally prompt and consistent in responding to contacts and initiating most of the contacts and in following through." It appears that Don did a commendable job in this case and that his efforts reflect a genuine desire to help Viviane and her family.

The evidence also supports the superior court's findings that Viviane "never really engaged in the program," did not make any progress on her case plan, and "ha[dn't] made an effort" in the 18 months following Selena's birth, thus frustrating OCS's active efforts by her lack of engagement.[12] Viviane missed her drug tests and put off the substance abuse assessment and treatment program for months. Crucially, she failed to engage with Don's persistent attempts over the course of many months to track her progress and keep her on a course of recovery. The evidence supports the conclusion that it was Viviane's own erratic engagement — which the superior court found to be reflective of someone cycling through periods of sobriety and drug use — that "rendered

---

[12] *See, e.g.*, *Demetria H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 433 P.3d 1064, 1072 (Alaska 2018) (affirming active efforts finding when OCS "created numerous case plans and tried to engage [mother] in following them" and OCS "provided referrals for parenting classes, substance abuse and mental health assessments and services, and housing" but she "elected not to attend meetings and not to follow through on the referrals").

provision of services practically impossible."[13]

Viviane points to several specific lapses on OCS's part that she contends interfered with her successful rehabilitation. Viviane first notes the testimony of the initial OCS intake worker, who did not recall whether she responded to Viviane's requests in early February 2018 for the phone numbers of drug testing and treatment programs. But the intake worker had the case for less than three weeks. And Viviane does not dispute that Don followed up immediately once the case was assigned to him in early February, making a referral to CITC Recovery Services and providing the necessary collateral information and payment voucher. Viviane also points to Don's testimony that he did not recall whether, after he reviewed her application materials for residential treatment and left them at the front desk for her to pick up, he followed up with her to see whether she had gotten them or needed further assistance. She argues that this lack of effort by OCS "prevented her from completing her case plan and regaining custody of Selena."

"But the active efforts requirement does not require perfection,"[14] and "courts are to look to OCS's efforts throughout the entire case to determine whether OCS made active efforts."[15] The record supports the superior court's conclusion that OCS made active efforts to provide Viviane with the services necessary for the reunification

---

[13]    *See Sylvia L.*, 343 P.3d at 433 (quoting *E.A.*, 46 P.3d at 990).

[14]    *Pravat P.*, 249 P.3d at 272.

[15]    *Sam M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 731, 737-38 (Alaska 2019) (holding that OCS had made active efforts to reunify family despite immediately filing petition for termination after concerns regarding father's sexual misconduct surfaced, when superior court determined case was "unrecoverable" and father's "desire for more time to seek treatment for his sexual misconduct issues was outweighed by [child]'s need for permanency").

of her family but that its efforts were frustrated by Viviane's lack of engagement.  The superior court therefore did not err in its active efforts finding.

## V.    CONCLUSION

We AFFIRM the order terminating Viviane's parental rights to Selena.